Which is Salso Palma Ulloa et al versus Fancy Farms, Inc. Good morning, may it please the Court, I'm Jennifer Racine of Cazwitz-Benson-Torres and at Council's table is my colleague Sabrina Bang. We represent... And Ms. Racine, as we proceed, if I could ask you to speak right into that microphone. You're probably aware the microphone will take down and we are electronically recording the dialogue so there's a record afterwards for the Court or the parties. So keep your voice up and speak right into it. Thanks much. Will do, Your Honor. We represent 54 plaintiffs, appellants, all Honduran H-2A guest workers who work for the defendants, Fancy Farms, during the 2013-2014 strawberry harvest. And all of these plaintiffs are undisputably the victims of human trafficking. As an initial matter, the appellants seek three separate forms of relief. First, the plaintiffs and appellants contend that the District Court clearly erred when on January 20, in January 18, 2018, it dismissed their contract claims. Those 11 plaintiffs had paid recruitment fees of between... Let me ask you a question, you've got sort of two parts here. Certainly. It's what happened after June 2013 and what happened before June 2013. Correct. The regulations indicate that there has to be some engagement. I don't find any contract between Fancy Farms and your clients for part before June 2013. Between my clients and Fancy Farms? Or between Fancy Farms and the recruiters? Well, the recruiter. Okay. So the recruiters, first of all, the regulation at issue makes clear, it does not use the word employment. It uses the word engage. And it qualifies the word engage with the following words, directly or indirectly. Which suggests, by its plain meaning, that Mr. Molina, A&S, and Mr. Burns, who were the recruiters here, did not have to be employed pursuant to an employment contract in order for Fancy Farms to have the obligation to clearly prohibit them from collecting recruitment fees from those who came to ultimately work at Fancy Farms. It's undisputed on this record that not only did Mr. Grooms and Fancy Farms fail to prohibit, but they also represented, in absolute contrast to that failure, to the U.S. government that not only did they prohibit and would they prohibit Mr. Molina and Mr. Burns from seeking recruitment fees, but also in the June 14th, in the June 14th clearance order, both Mr. Grooms and Mr. Molina, whom, by the way, Fancy Farms insists was not employed until June 20th, and the district court plainly erred in finding, did not, was not employed before June 20th, because there's a clear dispute of fact with respect to that, established plainly by the clearance orders. The clearance orders are dated six days before the employment contract, and the clearance orders list Mr. Molina as the head of HR for Fancy Farms. Moreover, in the same document, Mr. Grooms of Fancy Farms, who claims that the reason he didn't contractually prohibit the recruiters from charging recruitment fees was because he was unaware of the law. Of course, we all understand as a matter of Hornbook law that failure to make yourself aware of the law is not a defense to having not complied with it. But notwithstanding that, in that same document where Mr. Molina holds himself out as an employee of HR, which is the head of HR and an employee of Fancy Farms, before the date of the contract, it's plain that he is engaged, at least indirectly on behalf of Fancy Farms, because he submits the clearance order together with Fancy Farms, signs it as the head of HR, and then Mr. Grooms, who claims to have no understanding or knowledge, says under penalty of perjury two different things. He says under penalty of perjury that the employer and agent has not, has not sought or received payment of any kind that's inconsistent with the regulations, i.e. recruitment fees. And Mr. Grooms certifies under penalty of perjury that he has, meaning up to and prior to this date, he has prohibited Molina and the other recruiters from charging recruitment fees and that he will do so going forward in the future. So it's hard for me to understand the district court's ruling that there was no engagement prior to June 20th when both Mr. Molina and Mr. Grooms made a submission to the U.S. government under penalty of perjury saying that they were engaged together in this effort of obtaining H-2A workers to work on his farm during the 2013-2014 season. So that, that goes to the second issue, which is the, the summary judgment issue where the district court in 2017 dismissed the contract, dismissed both the, both the FLS claims, FLSA claims and the contract claims on the basis that there was no contract pursuant to which Mr. Grooms and Fancy Farms would have prohibited Mr. Molina from collecting fees prior to June 20th. But the fact of the matter is, is that there is a record rife with disputes concerning that subject matter. Does Florida law require proximate cause to prove a breach of contract claim? And if it does, where was the causation in this case? Sure, it does. But the bar is set forth in the briefs, the cases cited in our briefs, is actually relatively low and there are two ways of proving proximate causation flowing from a contract. One is reasonable foreseeability. Here, there's evidence in the record, which was ignored by the district court, that demonstrates that Mr. Grooms was aware that Mr. Molina had charged recruitment fees in the past. There's also evidence in the record. What evidence is there to that effect? There is, there are notes that Mr. Molina, I'm sorry, Mr. Grooms wrote on when he was going through the references for Mr. Molina. So between, I believe, the initial, either the first or second meeting between Mr. Molina and Mr. Grooms, and the final retention of Mr. Molina, according to the record that was stipulated below, Mr. Grooms made a call to references. And there are notes that are in the record, and those notes are written on. And those notes, in those notes, Mr. Grooms indicates that there were prior instances of paying for recruiters. And in his deposition testimony, he acknowledged that there was also prior history of Molina's recruits not being paid the amount they were supposed to be paid. Did not Fancy Farms tell Molina at the time they retained him to perform this job correctly? And told him, if you mess this one up, I'll be sure you never get a job like this in the state of Florida again. First of all, I think that there are many different inferences. I agree that he did say that. No, answer my question. Yes, Your Honor. Then tell me, is that not relevant evidence in this case? It might even, it is relevant evidence, but it might be relevant evidence in favor of my clients. Because what Mr. — remember, at or around the time that Mr. Grooms made that statement, he also had signed a document where he said, I will specifically prohibit you in a contract from charging recruitment fees. Then he doesn't do that. Instead, what he says — That's the strongest part of your case, as far as I'm concerned, is he didn't strictly comply with the regulation. But my question is, even though he didn't do that, can you establish proximate cause? Absolutely. Because he understood — it's not clear to me, and I think it's appropriate, it's not clear to me that what Mr. Grooms meant when he said, I'm telling you to apply, to do this right, or you're never going to get another job. That what he meant was to strictly comply with the law. Mr. Grooms' defense is effectively that he did not understand the law, which is not a defense. It's not an appropriate defense to say, I didn't understand the law, therefore I can't be liable. A normal contracting party — and Mr. Grooms is a normal contracting party, he's a businessman — he signed a contract, and the words of those contracts said that he would not, with the workers, and the words of those contracts said that he would not charge them fees. And he would prohibit his recruiters from doing so as well. It's a natural and foreseeable consequence of his failure to do so. Let me just sharpen the question this way for you. Tell me what evidence there is, bullet form, 1, 2, 3, 4, 5, that suggests there was proximate cause in this case. That — That is to say that Grooms knew or had reason to know that in the absence of putting into the contract the language that the regs plainly required him to do and he did not do, and in that absence, he would have gone forward differently. Your Honor, I would say I only have a minute left, so — All right, you take your time. You just tell me, 1, 2, 3, 4, 5, what is there here that factually puts that issue into dispute? Mr. Grooms understood that recruitment fees were a problem. For Molina. For Molina and generally. He testified to both. He understood that they were — his quote was, they were a big problem, that sometimes they were a charge and it was a big deal. He didn't educate himself about the law, notwithstanding knowing that. He didn't educate himself about the law, notwithstanding the fact that he specifically was told, Molina, the person he was hiring, who would be the single point of contact — First thing is he knew or had reason to know. What else? Well, in addition, he signed an agreement and certified to the government that no recruitment fees had been charged. So he understood recruitment fees were an issue. He also signed — Are you suggesting that that was — that certification was false or fraudulent? Well, it is false because he also says — Do you think he intentionally lied on the form? Whether he — Is there evidence — I understand you don't have to prove that. I'm simply asking you to tell me what evidence there is of proximate cause. I think the — First, you said he knew that recruitment was a problem in general, and two, there's some record evidence that he knew there was a problem with Molina in particular. Second, you said Grooms certified that no recruitment fees had been charged. And in addition, he certified that he would specifically forbid his contractors and recruiters from charging recruitment fees. So the factual record is, is that on June 14, 2013 — Is there anything else factually beyond what he knew and the certification? Leading up until the date of the certification, or would you like me to — In general, I just want you to tell me what is there to show proximate cause. Those — You cited two things for me. Is there a third? Absolutely. Now just tell me simply, time is short, just boom, boom, boom, what evidence is there of the other evidence of proximate causation? Is that the Department of Labor specifically put together a regulatory regime that made it the employer's obligation to prevent recruitment fees, and he knew or should have understood that, based on the multitude of documents concerning that regulatory regime that he reviewed and signed under penalty of perjury. He also had the ability to, and never did, ask any of the employees if they paid recruitment fees, notwithstanding his certifications to the contrary. And he made those certifications more than one time. He made them in June, and he made them again in November. You started to say it's a piece of evidence that he never asked the employees whether they were ever charged a fee? Correct. Correct. He never asked them. And he — Was he obliged to do that? I believe — first of all, I think he had an inquiry obligation, since in two instances, the second instance happened after his — But isn't there evidence here that once he was put on notice squarely, indeed he did take action? He was put on notice — once he got a letter from a lawyer. But what there's also evidence of is that between when the workers first arrived in the fall of 2013, and when he asked through a second request to the government for a second tranche of workers, another 75 workers, that there were workers present, they were telling people within Fancy Farms that they had been paying recruitment fees, he nevertheless asked for additional workers, didn't amend his agreement with Molina, and made the same representations to the government without ever having inquired, notwithstanding the fact that the workers were actually on his farm. So he made an initial certification to the government before the workers were there. So I guess it's possible that he had to rely in that instance on Molina to tell him whether or not there were recruitment fees charged. I think we've got it. Thanks very much. You've reserved five minutes for rebuttal. May it please the Court. Good morning. Good morning. My name is David Stephanie. I have the privilege of representing Fancy Farms along with my colleague, Matthew Stephanie, my oldest son. The facts in this case are critically important because the allegations of the complaint suggested that there was some sort of relationship between Fancy Farms and Mr. Molina or his company, All Nation Staffing, and then after the relationship was formed, these recruitment fees were obtained contrary to the regulations. That's not at all what the evidence found by the district court relied upon. You had no contract before June of 2013. Is that correct? Correct. June 20th is the date that Mr. Molina and his assistant went to work for Fancy Farms. I didn't think I would, but I mean, there's no establishment prior to June 2013. But after 2013, there is a contract. There is an employment relationship after June 20th of 2013. You're correct, Your Honor. That has an impact on what the district court referred to as the 11 remaining plaintiffs and their contract claim. It doesn't have an impact, in our opinion, with the court's correct analysis of applying the Arriaga decision on principles of agency. In this case, the court found specifically that at no time did Fancy Farms ever authorize Mr. Molina or Burns to request recruitment fees of prospective H-2A workers or to accept recruitment. They were aware, though, that Mr. Molina had a reputation for charging the fees, were they not? Not at all, Your Honor. That's completely speculative. But they were. There's no evidence in the record to suggest that Mr. Molina had any prior history of charging workers recruitment. They did have a conversation with him, though, about doing that. I'm sorry? They did have a conversation with him about not doing that. He did have a conversation when he prohibited him essentially from doing anything contrary to what the law would allow and essentially gave him the western justice approach of you'll never find a contract in Florida again if you mess this up. Let me ask . . . In other words, to that effect. Let me ask you the one question about this case that troubles me from your side, and then I want you to tell me whether or not it makes any difference, and that is this. There is this federal regulation out there that required Fancy Farms to contractually prohibit Molina or anybody else, for that matter, from collecting these recruitment fees from potential workers. That was not done in this case. I don't know why it wasn't done. I don't know if your client just was simply unaware of that regulation. It doesn't matter, but does that fact make any difference in how we decide this case? The fact that it was a required federal regulation to make this contract between Fancy Farms and Molina and it wasn't done, does that affect the outcome of this case? Your Honor, in our opinion, it does not affect directly the outcome of this case. I just, first of all, would say that the specific question about why it wasn't done, the evidence in the record is Mr. Grooms testified in his deposition. He was not aware that he had to do that. Does that make any difference? I don't think it does, Your Honor. What makes a difference . . . Ignorance of the law is no excuse, right? I agree with that Hornbook principle, Your Honor. Okay. Then tell us, does that make any difference in the disposition of this case? The answer is no to your question. Let me explain why. Under the FLSA, this case is determined . . . The FLSA claims of the plaintiffs, the fifty-four plaintiffs, is determined by Arriaga and the principles of agency. I was on Arriaga, but that was a long, long time ago. Judge Kravich, as I recall, actually wrote the opinion in that case. I was familiar with that judge because that was my case, Arriaga. You looked a little familiar. Thank you for suggesting. I haven't aged that much, but it's been a long time. Arriaga controls the FLSA claims, Judge. The contract claims, which are asserted here, are dependent upon the very question you asked my opposing counsel, and that's the issue of the proximate cause issue. Which is required under Florida law. There's no question and there's no evidence whatsoever of proximate cause as found by the district court judge in this case in making the ruling that she entered in her final order. Go back to my question about does it make any difference on the fact your client did not comply with this federal regulation? Your Honor, it doesn't make a difference to the contract claim. What it does make a difference to though is this. The Department of Labor has indicated through this regulation a clear intent to try to prohibit these kinds of terrible recruiting practices. Notwithstanding the fact that they admit, as the district court quoted in her decision, that the ability of the Department of Labor to regulate foreign recruiters outside the corners of the United States is constrained. They don't have that authority. However, it's a well-intended effort to try to minimize this terrible practice that happens in these areas where these workers are so vulnerable to essentially the snake oil salesmen that make all these ridiculous promises. It is an intent, a regulatory intent, that should be honored and followed. My client completely messed up by not putting that in its agreement. It relied upon the expertise of all-nation staffing and it signed off on an agreement that all-nation staffing drafted expecting that the expertise was known. That was my client's mistake. But in the Department of Labor's own regulations, they say a prima facie case of doing the right thing would have a written prohibition. In this case, there was a verbal prohibition to do everything correctly. Well, that's a little different than what the statute or the regs require. It isn't, and there's no question. It's one thing to say comply with the law as a general and abstract matter and quite another thing to comply with a regulation that says specifically you've got to tell the contractor he can't do this in the contract itself. I agree, Your Honor. That's what the regulation clearly says. So it isn't an answer to say he told them just to comply with the law. It's part of the answer to get to the second point I was trying to address with Judge Dubina, and that is the Department of Labor also says that there can be a written prohibition, exactly what the regulation requires, and that by itself is not a get-out-of-jail-free card for a grower. Because if the grower had knowledge, for example, in the regulations and the preamble, the grower might have a ridiculously low price for the labor services being requested or even no price at all, and that should put the grower on knowledge constructives, hmm, something's not right here, or credible complaints about other recruitment fees. So none of that record evidence exists here. When Carl Grooms signed off on the clearance order, the date of the clearance order that he signed off that was certified was June 25, 2013, he had no knowledge whatsoever of any kind of recruitment fees having been obtained or requested by Mr. Molina or any of his lieutenants down in Central America. This is a case where Mr. Grooms, at the time he signed off on this clearance order, expected workers coming in two different dates, 100 workers to come September 1st and later requesting another 75 workers to come in early December. Workers never came when they were supposed to come because Mr. Molina didn't get the workers there. So is it your view in response to Judge Dubina's direct question that this Department of Labor Reg CFR 20 CFR 655.125K is irrelevant to the determination of whether or not there was proximate cause, whether it was reasonably foreseeable that if you failed to include in the contract with the recruiter that which the law said you were obliged to put in the contract? Your Honor, we don't It's irrelevant. It's not irrelevant. What relevance does it have? It has relevance because of the intent of the regulation to try to prohibit this practice. Right, but for purposes of giving meaning to what Congress obviously had in mind and what the Department of Labor had in mind, it's of no consequence here in establishing probable cause. That is to say you cannot reasonably infer from the absence in the contract of this specific requirement that it was more likely than not that the recruiter would violate the law. That is our argument, Your Honor, because I understand, but I'm trying to understand what possible relevance this reg would have in this context other than stating as an abstract matter that they're supposed to comply with this 655 CFR. Well, Your Honor, this set of fact pattern eventually unrolled into a significant problem for Fancy Farms with respect to the workers reporting fees, the workers then having to be sent home at Fancy Farms' cost because Right, but that's not my question. I understand that there are other collateral consequences that attach from the failure to comply with the reg. That's not my question. Okay. My question is for purposes of establishing probable cause, is the fact that you did not give this warning in the contract with the recruiter a relevant piece of evidence? Your answer has to be that's right, it's irrelevant. Your Honor, it's And if the answer is it's relevant, then what relevance does it have? What are we supposed to infer from his failure to include the language that the reg required him to include? It is not relevant to proximate cause. It is relevant to his compliance with the H-2A program regulations for which Fancy Farms Right, but that's not what we're hearing. That's not what we're debating. That may be true. It's an interesting point. There may have been collateral consequences and harm and damages that befell him. I'm simply asking whether it bears any relationship to the breach of contract claim before us. It does not Our district court said no. Is it your position it's irrelevant? It is irrelevant because it does not create proximate cause for that damage. Doesn't afford any inference? No. Not the regulation itself, Your Honor, otherwise there's Not the regulation, the failure to comply with the regulation. Does that afford an inference? I do not believe it does in this case because there was not a specific knowledge on behalf of Mr. Grooms, the principal of Fancy Farms, that any of this conduct had taken place. So his ignorance is the defense to what otherwise would have been relevant? I'm not trying to put words in your mouth, truly. I'm just trying to understand whether this D-O-L reg has any bearing on an inference that might reasonably be drawn by a fact finder. I don't think it has any inference of proximate cause simply because it's in the regulation for purposes of contract damages under Florida law. I believe the district court judge correctly decided that and was looking for some sort of evidence that was not supplied at this bench trial, essentially. Let me ask you, if that's right, maybe it is, but if that's right, how would a plaintiff go about proving, meeting his burden of proof in a case like this? It seemed to me it would be almost impossible unless maybe there was evidence that the same recruiter did or did not charge a fee for some other similarly situated grower where that grower put the recruiter on notice. Short of that, I'm hard-pressed to see how they could possibly meet their burden or ever show proximate cause here. Your Honor, I think it's a very good question, but it's a very difficult burden to meet because In your answer, maybe that's just the way the law works. In this case, Mr. Molina, even though his LLC was a Florida LLC, he disappeared. He was sued initially by at least one of the plaintiffs in the southern district here. They never could find him to provide service or process, so they dropped the case and dismissed it and then came back and sued Fancy Farms. It's a difficult thing to track down. Someone who's engaged in fraud in an international scale, which violates a number of federal statutes, he's going to be hiding, and he never was able to be served initially in the lawsuit, and he was not able to be served with a summons for a deposition to cooperate and provide any evidence in this case. Let me ask you a slightly different question. Yes, sir. Help me with the record. Your colleague suggests that there is record evidence here that establishes two things. This may not be conclusive or dispositive, but there's record evidence that sheds some light on two things. One, that Grooms knew, not that he had reason to know, but that he actually knew that recruitment fees were a big problem as a general matter, that recruiters hit these employees up for big recruitment fees as a general matter, and two, he had some reason to believe, based upon communications he had with other growers or other folks, that Molina had a problem in this connection as well. Is there record evidence to suggest both of those points? Yes to the first, no to the second. Yes, Mr. Grooms was aware of the history of recruitment fees being a problem within the H-2A program. Clearly, Your Honor, the Arriaga case came out of west-central Florida, the Plant City area, which is exactly where Fancy Farms operates, so this is something that he had learned and heard about at various seminars, so there is evidence to that effect. However, the allegation that there was some knowledge of Mr. Grooms having knowledge of Molina engaging in similar practices, there's no evidence whatsoever. There is a note that was attached as Exhibit 1 to Mr. Grooms' deposition, which is in the record, where there were some handwritten notes when Mr. Carl Grooms checked on the references, but there's nothing in there about recruitment fees and it's pure speculation as to what the notes mean. What does the note say, taking it in a light most favorable to the non-moving party? Well, as best I can read, Your Honor, since it's in front of me, it refers to his contact with a tomato grower by the name of Red Diamond Farms and a person by the name of Juan Lopez. I called Juan Lopez, only works for them. The owner called me. Out of 50, only 29, it looks like, remain. Others said they had to pay extra to come to U.S. We're not making enough money. So the others said they had to pay excess to come to U.S. That's what the notes reflect the grower telling Grooms. Correct. And what that means is that in reference to Molina? No idea. It could mean as well that workers traveled a great distance from various parts of Mexico or wherever else they came from for that particular grower. When did he come? In the course of his deposition, did he explain what due diligence he did in checking Molina out with other growers? Yes, he did, Your Honor. And what did he say about that? Amongst calling these references, which were provided by all-nation staffing and Mr. Molina, he called the state workforce agency, Walter Jantz, and got a positive recommendation. So he did other calls beyond just these references. Did he ask any of these folks whether Molina had a problem with hitting these employees up for recruitment fees? That specific question, I do not believe, was asked at the time. So the closest you got is just this note. The closest they have to speculate what it means is this note. And they never asked him anything about that particular note at his deposition. Let me ask a final question of you this way in a slightly different way. Pretty obvious what the purpose of Congress was and what the intention of the DOL was in seeking compliance with this regulation. These workers were in a very difficult position. They were a vulnerable class. Congress sought to provide some protection. And one of the things the Department of Labor did to ensure that protection was to put the requirement firmly on the growers' back to tell the recruiter, thou shalt not do this. You can't charge a fee, a recruitment fee. If we were to read this case the way you do and the district judge did, don't we really go a long way to gutting exactly what that reg was designed to do? If we say no inference can be drawn from the failure to include that warning in the contract, no inference can properly be drawn for purposes it would undermine in a substantial way, would it not? The purpose standing behind 655? I don't think it undermines it because of the other penalties that the grower is susceptible to for having not honored that regulatory provision. So undermines too strong. But the regulatory intent, as laudable as it is, and I'm here to say it's a laudable intent, there is not the ability, and I think the statute itself, 8 U.S.C. 1188, subpart D, which talks about liability under associational petitions where members and associations are joint employers, makes it very clear that the liability for violations goes to the person who knew or should have known about a problem and an association that does something wrong under the H-2A program does not disqualify that person. Right, but there's no claim here that the... That's the congressional intent. Right, but there's no suggestion that the Department of Labor went beyond its ken in codifying this reg, right? You're not saying they went beyond their power in codifying this reg? It was in no sense consistent with the statute or anything like that. You're not making that argument. That's not my case. Gotcha. Thank you very much. Thank you for your questions and interest. Thank you. Could you tell me, counsel, what specifically in the notes of Grooms that were attached to his deposition say or suggest by at least one construction that Grooms not only knew there was a recruitment problem in general, but he knew that Molina may have had a problem in particular? Because that's what I understand your argument to be, if I have it right. I do, Your Honor. I would invite the court to look at DE 48-1. Those are the handwritten notes at issue that Mr. Grooms maintained from his telephone conversation with a reference of Molina. And a quote from those handwritten notes include, in quotes, that Molina charged extra to come to the U.S. There is a reasonable construction of that statement. Molina charged extra in coming to the U.S.? Extra to come to the U.S. And who was he speaking to when he wrote that? I believe it was the gentleman from Diamond Farms, who my adversary was just speaking about. And so he was speaking to someone who was a reference for Molina, had worked directly with Molina. Is it clear that the reference is to workers being charged extra? Workers, extra money to come to the U.S. In other words, I thought it just said Molina charged extra to come to the U.S. And it also said the workers, in quotes, were not making enough money. Taken together with Grooms' concession that he was aware of... And that's found at docket entry 48-1? Yes, Your Honor. Are there any other notes that bear upon Molina in particular that appear attached to the deposition of Mr. Grooms? I'm not aware of any other notes. Let me ask you this to follow up on Judge Marcus' question. This was a summary judgment case. Does that note in and of itself create a genuine issue of material fact that would preclude summary judgment on this particular claim? I do believe that that, together with Mr. Molina's... Excuse me, Mr. Grooms' acknowledged awareness of the problem of recruitment fees, together with his certification that no... I disagree with you that that would be enough. But coupled with... Together. Together. Together. And together, all of those things, together also with the affidavits of a multitude of the plaintiffs and interrogatory responses where they confirmed and swore that Mr. Molina held himself out as a representative of Fancy Farms, was the sole source of employment for Fancy Farms, all of those things together create a genuine issue of fact concerning a number of things, including truly when Mr. Molina and ANS began their engagement on behalf of Fancy Farms. Would that affect the contract claim, the FLSA claim, or both claims? Both claims. It would affect the contract claim in the sense that if the panel were to find that there is causation here for the 11 plaintiffs that paid after June... There is, but there's a genuine issue of material fact. The genuine issue of... Big difference. Yes. That causation, that these facts would apply to all of the plaintiffs who paid before June, their claims should go to trial. Summary judgment should be reversed. And it bears on the FLSA claim as well. As you know, because you sat on the panel in Arriaga, and it was a long time ago, there have been some cases since then, Ramo Barrientos among others, and those cases demonstrate that there can be questions about apparent authority as well as actual authority. And here, if there's a question of fact about whether Mr. Grooms knew or should have known that fees were being improperly charged, and he nevertheless certified to the U.S. government that no fees were charged, it may very well be that he authorized. Help me understand what the district judge did here, because I understood that the district court entered summary judgment for Fancy Farms on the FLSA claims and entered summary judgment on the breach of contract claims brought by plaintiffs who had paid the fees before the recruiters were formally or officially hired by Fancy Farms. But with respect to the other 11 that we're talking about, the party submitted proposed findings of fact and conclusions of law, and the district court entered judgment for Fancy Farms on the remaining contract claims after making findings of fact and conclusions of law. It was, if you will, the functional equivalent of a bench trial by the trial judge. Is that what went down here? Correct, Your Honor. Okay, so we're looking at the other last group, not on summary judgment. Correct. The question is not whether there was a material issue of fact in dispute. There plainly were. The question is whether or not the district court either clearly erred in findings of fact or made a clear error of judgment as a matter of law. Correct, Your Honor. And we would submit that with respect to... So to the extent that she's finding facts here, your argument has to be, it seems to me, that the district judge made an error of law in failing to so much as consider the relevance of the DOL reg. Correct, Your Honor. That's the legal error because she could have been perfectly free to look at the notes, quote, Malina charged extra, to come to the U.S. The workers were not making enough money and simply found that wasn't enough. But that is not what she ruled, Your Honor. If you look carefully at the order, what she concluded was that there was absolutely no evidence of causation. And because there was no evidence... Right, and the reason was because she totally discarded the DOL. Correct, but she also totally disregarded the other evidence. So there is the DOL regulation, and she absolutely disregarded the impact of that on the potential for causation. She also completely discounted... She was free to discard it if she wanted as the fact finder, wasn't she? Well, perhaps she was, but she didn't say that. You say perhaps she was. Wasn't she free to do that? That is not what she did. I understand that, but she would have been free to do that if she chose. If she had said, and I have found that it is not persuasive, then I think that would be one thing. If she had said, She would have done that. But that is not what she said. She went out of her way. Unless your argument is, and you never made it in the blue brief, that she was obliged to make findings and she didn't. She couldn't just reach conclusions of law as a trier of fact, which she obviously was here. I actually think she did find a fact. And the fact that she found was that there were no facts. That's what she said. Her conclusion was there were no facts on either side with respect to causation. And she talked about some evidence that the defendants raised, and she discounted it. She said, I don't find this evidence to be persuasive. But she ignored entirely evidence with respect to Groom's knowledge that goes absolutely to the standard for causation under Florida law, which is, did Mr. Groom's know or should he have known? Was it foreseeable? Was it a natural consequence of his failure to include this prohibition that recruitment fees would be charged? I think we've got it. Thank you very much. Thank you both for your efforts. This court will be taking just a short 15-minute break.